UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

YAAKOV KATZ, on behalf of himself and all others similarly situated,

                Plaintiff,

vs.

CULVER NARROWS BEER DISTRIBUTORS, INC., a New York corporation; ANDRE PANTALEO, Individually and in his Official Capacity on behalf of CULVER NARROWS BEER DISTRIBUTORS, INC.; and, JOHN AND JANE DOES NUMBERS 1 THROUGH 25

                Defendants.

---------------------------------------------------------------x

CASE NO.: 1:12-cv-04914-DLI-VVP

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Plaintiff, YAAKOV KATZ ("Plaintiff" or "KATZ"), on behalf of himself and all others similarly situated, and demanding a trial by jury, brings this action for the illegal practices of the Defendants CULVER NARROWS BEER DISTRIBUTORS, INC. ("CULVER"), ANDRE PANTALEO ("PANTALEO") (together referred to hereinafter as "Defendants") for the violation by Culver Narrows Beer Distributors, Inc. of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2. One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

**No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.**

3.  Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007); accord, Iosello v. Leiblys, Inc., 502 F.Supp.2d 782 (N.D.Ill. 2007); Follman v. Hospitality Plus of Carpentersville, Inc., 07 C 2934, 2007 U.S. Dist. LEXIS 77440 (N.D.Ill., Oct. 17, 2007); Follman v. Village Squire, Inc., 07 C 3767, 2007 U.S. Dist. LEXIS 92585 (N.D.Ill., Dec. 18, 2007); Korman v. Walking Co., 503 F. Supp. 2d 755 (E.D.Pa. 2007); Ramirez v. MGM Mirage, Inc., 2:07-CV-00326-PMP-PAL, 2007 U.S. Dist. LEXIS 95254 (D.Nev. December 3, 2007).

4.  The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

5.  One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This modus operandi is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

6.  To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

7.  The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

8.  Defendants have willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit and debit card fraud by failing to comply with the truncation requirement.

9.  On June 3, 2008, Congress retroactively removed liability for willful expiration date violations through that date. This amendment was widely publicized and sponsored by the Chamber of Commerce and other retailer organizations. No exemption was provided for printing too many digits.

10. Plaintiff brings this action against Defendants based on Defendants' violation of 15 U.S.C. §§1681 *et seq.* Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p (FCRA).

12. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of New York at the time this action is commenced.

## PARTIES

13. Plaintiff is a natural person.

14. At all times relevant to this complaint, Plaintiff resided in the County of Kings, City of New York, State of New York.

15. At all times relevant to this complaint, CULVER is a for-profit corporation existing pursuant to the laws of the State of New York. CULVER maintains its principal business address at 990 McDonald Avenue Brooklyn, NY 11230.

16. Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this complaint, PANTALEO is a natural person who resides in the City of New York, Kings County, New York.

17. Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

18. The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, oversaw, and engaged in the illegal policies and procedures used by employees of CULVER that are the subject of this complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by CULVER and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

**FACTS**

19.     On September 16, 2012, Plaintiff made a purchase from CULVER at its store located at 990 McDonald Ave. in Brooklyn, New York.

20.     At the time of purchase, Plaintiff received a computer-generated cash register receipt (the "Receipt").

21.     The Receipt displayed more than the last five digits of the Plaintiff's credit card number. A true and correct copy of the Receipt is attached hereto as **_Exhibit A_** except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, redacted the first 6 digits of Plaintiff's credit card number and the expiration date in an effort to protect Plaintiff's privacy.

22.     Plaintiff is a "consumer" as defined by 15 U.S. Code § 1681a(c).

23.     CULVER is a "person" as defined by 15 U.S. Code § 1681a(b).

24.     CULVER accepts credit and debit cards in transacting its business which is the sale of goods to the public.

25.     Upon information and belief, PANTALEO is a principal, officer, director, manager, supervisor, and/or employee of CULVER.

26.     Upon information and belief, PANTALEO personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw the illegal policies and procedures used by himself and other employees of CULVER that are the subject of this amended complaint.

27.     PANTALEO is a "person" as defined by 15 U.S. Code § 1681a(b).

## .CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

29.     The class is defined as all persons to whom Defendants provided an electronically-printed receipt at the point of sale or transaction, which receipt was issued on or after a date five years

prior to the filing of this action and displays either (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card.

30. The class is so numerous that joinder of all individual members in one action would be impracticable.

31. There are over 100 persons to whom Defendants provided an electronically-printed receipt at the point of sale or transaction, which receipt was issued on or after a date five years prior to the filing of this action and displays either (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card.

32. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

33. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

a. Whether Defendants had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

b. Whether Defendants thereby violated FACTA;

c. Whether Defendants' conduct was willful;

d. Identification and involvement of the Doe defendants.

34. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained counsel experienced in consumer class actions.

35.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

36.     Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.**

37.     With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

38.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

39.     Defendants accept credit cards and/or debit cards in the course of transacting business with persons such as Plaintiff and the class members. In transacting such business, Defendants use cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

40.     After the effective date of the statute, Defendants, at the point of sale or transaction, provided Plaintiff and each class member with one or more electronically-printed receipts on each of which Defendants failed to comply with the truncation requirement.

41.     FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

42.     Defendants knew or should have known of the truncation requirement.

43. VISA, MasterCard, the PCI Security Standards Council – a consortium founded by VISA, MasterCard, Discover, American Express and JCB (companies that sell cash registers and other devices for the processing of credit or debit card payments), and other entities informed merchants about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

44. The requirement was widely publicized among retailers.

45. For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

46. Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

47. The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

48. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the

receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

49.     Defendants accept Visa cards and are parties to a contract requiring compliance with the above-quoted requirement.

50.     American Express has a manual that contains a similar depiction of what information must be suppressed.

51.     These requirements were widely publicized. The following are illustrative.

52.     On July 9, 2003, L. Richard Fischer of VISA USA presented a written statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA. Mr. Fischer stated:

Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

53.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

Your credit card terminal is now–or will soon be required by law or the bankcard associations to truncate–or limit–the information that can appear on electronically printed sales receipts. What that means is that on all cardholder numbers:

- The expiration date must be eliminated

- All but the last four numbers of the card number must be obscured. . . . .

54. In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

**Make every transaction a safe one.** * * * *

- The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number. * * * *

55. Another credit card processor, Commerce Bank, sent "Merchant Compliance Awareness" notices to its customers during 2004. These stated that all but the last four digits of the cardholder account number and the entire expiration date had to be suppressed from the receipt.

56. A bulletin dated June 14, 2006 issued by AllianceData, another processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print **more** that the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

57. Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements.

58. On January 10, 2007, the National Retail Federation sent a memo to the general counsels of its members warning that failure to suppress both "credit card expiration dates or anything

beyond the last five digits of a customer's credit card number on the copy of the receipt provided to the customer" was likely to result in a lawsuit.

59. The Federal Trade Commission issued a business alert in May 2007 entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date."

60. Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

61. The cost of truncating account numbers and expiration dates is minimal.

62. Most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendants could have readily done the same.

63. Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

64. The FCRA, 15 U.S.C. §1681n, provides:

**§1681n. Civil liability for willful noncompliance**

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of–

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .

65.     The FCRA, 15 U.S.C. §1681p, provides:

**§ 1681p. Jurisdiction of courts; limitation of actions**

An action to enforce any liability created under this title [15 USCS §§ 1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and in favor of the Plaintiff Class as follows:

(i) An order certifying that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Class;

(ii) An award of the maximum statutory damages for Plaintiff and the Plaintiff Class pursuant to 15 U.S.C. §1681n

(iii) For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudging Defendants' computer-generated transaction receipts, one of which is attached hereto as ***Exhibit A***, and which is complained of herein, violates FACTA;

(iv) Attorney fees, litigation expenses, and costs pursuant to 15 U.S.C. §1681n; and,

(v) For such other and further relief as the Court may deem proper including punitive damages and sanctions.

Dated: October 24, 2014

_____
Shimshon Wexler, Esq.
The Law Offices of Shimshon Wexler, PC
216 West 104th St., #129
New York, New York 10025
Telephone: (212) 760-2400
Facsimile: (917) 512-6132
shimshonwexler@yahoo.com

William F. Horn, Esq. (WH-1070)

        Law Office of William F. Horn
        188-01B 71 Crescent
        Fresh Meadows, New York 11365
        Telephone: (718) 785-0543
        Facsimile: (866) 596-9003
        E-Mail: bill@wfhlegal.com

*Attorneys for the Plaintiff, Yaakov Katz, and all others similarly situated*

EXHIBIT A

Redacted →

```
              THRIFTY
           Culver-Narrows
          990 McDONALD AVE
         Phone-(718)854-6156
          Fax-(718)854-6157

                SALE
       ---------- Duplicate ----------

   Sep 16/2012  17:40:37  #733472  1
   Clerk: CLK#2  Cashier : CLK#2

   Item #        Price    Qty    Amount
   ShockTop Btl.  1.50     1      1.50 T1
   Deposit-1      0.05     1      0.05
   ShockTop Btl.  1.50     1      1.50 T1
   Deposit-1      0.05     1      0.05

   Item Count : 2

                   SubTotal:       3.00
             BOTTLE DEPOSIT:       0.10
                        Tax:       0.27

                   Total due:      3.37
       Tendered :    MCard:        3.37

          NEW STORE HOURS:
              SUN-SAT
                9-7
        www.thriftybeveragecenter.com


   Sep 16/2012   17:40:37

          Card Type : Mastercard
          Card Number    ******1876
          Expiry Date
          Card Entry : SWIPED
          Trans Type : PURCHASE
              Amount : 3.37
      Authorization# : 01114P
               Clerk : CLK#2
             Cashier : CLK#2

       I agree to pay above total amount
      according to the card issuer agreement


   Signature : _____
```